1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUICK KORNER MARKET, et al., | Case No. 15-cv-1364-BAS-JMA |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| U.S. DEPARTMENT OF AGRICULTURE, FOOD AND NUTRITION SERVICE | |
| Defendant. | |

Plaintiffs Janan Stephan and Donna Marie Stephan bring this action against the United States Department of Agriculture, Food and Nutrition Service ("FNS" or "Agency") seeking judicial review of the Agency's decision to withdraw authorization from Plaintiffs' grocery store to participate in the Supplemental Nutrition Assistance Program. (ECF No. 1.) Plaintiffs also bring an action for review under the Administrative Procedures Act, 5 U.S.C. § 701 et seq., and claims under 42 U.S.C. § 1983 for violation of the Fifth Amendment's due process protections. Defendant United States of America ("United States" or "Government")[1] moves to

---

[1] The Government asserts that under the Food and Nutrition Act of 2008 the only proper defendant in a suit for judicial review of a penalty or disqualification related to the Supplemental Nutrition

dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim. The Government also moves to transfer venue should any claims survive dismissal. (ECF No. 3.) Plaintiffs oppose. (ECF No. 6.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons that follow, the Court will **GRANT IN PART** the Government's motion to dismiss. The Government's motion to transfer venue is **DENIED AS MOOT**.[2]

## I. STATUTORY BACKGROUND

Congress enacted the Food and Nutrition Act of 2008 (the "Act"), 7 U.S.C. §§ 2011–2036, a successor statute to the Food Stamp Act of 1964, "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. A core component of the Act is the Supplemental Nutrition Assistance Program ("SNAP" or "Program," formerly known as the Food Stamp Program), which aims to alleviate hunger and malnutrition among low-income households by augmenting their ability to purchase certain food items. 7 U.S.C. §§ 2011, 2013(a). To be eligible for SNAP benefits, a household must meet certain income and resource constraint requirements. 7 U.S.C. § 2014. Beneficiaries receive SNAP benefits in the form of an electronic benefit transfer card, which they may use at retail food stores approved to participate in the Program. *See* 7 U.S.C. § 2016.

The participation of retail food stores in SNAP is critical to advancing the

---

Assistance Program is the United States. (ECF No. 3, Mot. to Dismiss ("MTD") 7:24–28.) The Government is correct. *See* 7 U.S.C. § 2023(a)(13) (providing that a grocery store aggrieved by a final agency determination "may obtain judicial review thereof by filing a complaint against the United States"). Accordingly, the United States is substituted as defendant in place of United States Department of Agriculture, Food and Nutrition Service.

[2] The Government moves the Court for an order transferring venue should any of Plaintiffs' claims survive dismissal. (MTD 10:25–28.) Because the Court will dismiss all of Plaintiffs' claims, the Government's motion to transfer venue is DENIED AS MOOT.

policy objectives envisioned by the Act. Store owners who wish to accept and redeem SNAP benefits must apply to, and receive authorization from, the FNS. *See* 7 U.S.C. § 2018. In considering grocery store applications, the FNS considers, among other factors, the nature and extent of the food business conducted by the applicant; whether the applicant is located in an area with significantly limited access to food; and the business integrity and reputation of the applicant. *See* 7 U.S.C. § 2018(a)(1).

Once a store has been approved to participate in SNAP, the FNS may penalize or disqualify the store from participating in the Program for certain offenses, such as "trafficking" in food stamps. *See* 7 U.S.C. § 2021. Trafficking includes "[t]he buying, selling, or otherwise effecting an exchange of SNAP benefits . . . for cash or consideration other than eligible food." 7 C.F.R. § 271.2. The penalty for trafficking is severe: the Act provides that a store's first-time trafficking offense results in permanent disqualification from the Program.[3] 7 U.S.C. § 2021(b)(3)(B). Furthermore, under the Program's implementing regulations, the FNS may withdraw a grocery store's authorization to participate in the Program based on "a lack of business integrity." 7 C.F.R. §§ 278.1(b)(3), (k)(3).

A store that has been disqualified from SNAP or otherwise sanctioned by the FNS may request administrative review of the decision within ten days of receiving notice of the decision. 7 U.S.C. §§ 2023(a)(1), (a)(3). Once completed, administrative review results in a final agency determination. 7 U.S.C. § 2023(a)(12). A store facing an adverse final agency determination may then seek judicial review under Section 14 of the Act, codified at 7 U.S.C. § 2023(a)(13). That provision provides:

> If the store . . . feels aggrieved by such final determination, it may obtain judicial review thereof by filing a complaint against the United States in the United States court for the district in which it resides or is engaged

---

[3] Under the Act, the Secretary of Agriculture has the discretion to impose a civil penalty in lieu of permanent disqualification "if the Secretary determines that there is substantial evidence that [the] store . . . had an effective policy and program in effect to prevent violations of the chapter and the regulations[.]" 7 U.S.C. § 2021(b)(3)(B).

in business, or, in the case of a retail food store or wholesale food concern, in any court of record of the State having competent jurisdiction, within thirty days after the date of delivery or service of the final notice of determination upon it, requesting the court to set aside such determination.

Two additional provisions of the Act discuss the standard of review for district courts reviewing an FNS final agency determination. Section 2023(a)(15) provides that the suit for judicial review "shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue[.]" Section 2023(a)(16) states that "If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence." An aggrieved store may also request the district court temporarily stay the challenged administrative action pending judicial review. 7 U.S.C. § 2023(17).

## II.   FACTUAL BACKGROUND

Plaintiffs are current owners of the retail store Quick Korner Market located in Phoenix, Arizona ("Phoenix store"), and previous owners of the Quick Korner Market & Deli located in El Cajon, California ("El Cajon store).[4] (Compl. ¶¶ 1, 5, 9.) In January 2005, while Plaintiffs owned the El Cajon store, the FNS sent Plaintiffs a charge letter indicating that the FNS had evidence of trafficking violations at the El Cajon store. (Compl. ¶ 8.) The FNS indicated that if the evidence was confirmed, the El Cajon store would be permanently disqualified from participating in SNAP. Plaintiffs received the charge letter on January 10, 2005, and responded on January 14, 2005. (ECF No. 3, Mot. to Dismiss ("MTD") 5:1–2.)

At some point after responding to the January 2005 charge letter, but before

---

[4] The Phoenix store and El Cajon store are also listed as Plaintiffs in this case. For the sake of clarity, however, the Court uses the term "Plaintiffs" to refer only to the store owners, Janan Stephan and Donna Marie Stephan. This shorthand is appropriate in light of the unique circumstances of the case (particularly, the change in ownership of the stores in question), and in no way impacts the legal analysis.

the FNS issued a final determination, Plaintiffs sold the El Cajon store and opened the Phoenix store. On October 7, 2005, Plaintiffs received authorization from FNS to participate in SNAP as owners of the Phoenix store. (Compl. ¶ 9.)

Meanwhile, the FNS completed its investigation and adjudication of the El Cajon store's apparent trafficking violations. On June 30, 2006, the FNS issued a determination letter that (1) confirmed the Agency's initial finding that Plaintiffs had committed trafficking violations and (2) permanently disqualified the El Cajon store from participating in SNAP. (ECF No. 3, Attach. 2.) The letter was delivered to the El Cajon store and confirmed by signature. (Compl. ¶ 10; MTD Attach. 3.) Plaintiffs argue that service of the letter was defective because Plaintiffs by that time had already sold the El Cajon store and had advised FNS of both the sale and the change of address.[5] (Compl. ¶ 10.) As a result, Plaintiffs contend, they did not have an opportunity to contest the permanent disqualification decision. *Id*.

Although Plaintiffs operated the Phoenix store with SNAP authorization for several years, the FNS eventually realized that Plaintiffs and their previous store had been permanently disqualified from the Program. On January 15, 2015, the FNS informed Plaintiffs by letter that the Phoenix store's authorization to participate in SNAP was being permanently withdrawn based on Plaintiffs' previous trafficking violations and permanent disqualification of the El Cajon store. (Compl. ¶ 11.) Given Plaintiffs' history, the FNS determined that Plaintiffs "lacked the necessary business integrity and reputation to further the purposes of the program." *Id*.; (ECF No. 3, Attach. 3.)

Plaintiffs timely requested administrative review. On May 1, 2015, the FNS issued a Final Agency Decision ("Decision") upholding the initial decision to permanently withdraw the Phoenix store's SNAP authorization. (ECF No. 3, Attach. 2.) The Decision explained that Plaintiffs could obtain judicial review by filing a

---

[5] The Government vigorously disputes this allegation. (MTD 5:9–15.)

1  complaint within 30 days of receiving the Decision. *Id*. Plaintiffs received the
2  Decision on May 5, 2015, and filed a Complaint with this Court 48 days later on June
3  22, 2015—18 days after the statutory filing deadline.[6] (ECF No. 3, Attach. 2, p. 9.)
4  The Government now moves to dismiss the Complaint pursuant to Rule 12(b)(1) for
5  lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a
6  claim.

**III.  LEGAL STANDARD**

**A. Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They possess only that power authorized by the Constitution and conferred by Congress. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986). Given these constraints, federal courts are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confed. Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989); *see also Nieto v. Ecker*, 845 F.2d 868, 871 (9th Cir. 1988) ("As courts of limited jurisdiction, our power to adjudicate claims is limited to that granted by Congress, and such grants are not to be lightly inferred.").

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction. A jurisdictional challenge under Rule 12(b)(1) may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for*

---

[6] To be clear, the Complaint is for judicial review of the FNS decision to withdraw the Phoenix store's SNAP authorization, not for judicial review of the El Cajon store's permanent disqualification, as such. Plaintiffs' allegations regarding the impropriety of the El Cajon store's disqualification are relevant because those allegations form the primary basis of Plaintiffs' challenge to the Phoenix store's de-authorization. In any event, the operative limitations period for assessing the timeliness of this suit is the 30-day limitations period outlined in 7 U.S.C. § 2023.

*Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. In resolving a factual attack on jurisdiction, a district court may consider affidavits and other evidence submitted by the moving party without converting the motion to dismiss into a motion for summary judgment. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). The party opposing the motion must then satisfy its burden of establishing subject matter jurisdiction. *See Kokkonen*, 511 U.S. at 377; Charles Alan Wright & Mary Kay Kane, Law of Federal Courts § 7 (7th ed. 2011) ("[T]he burden is on the party claiming jurisdiction to demonstrate that jurisdiction of the subject matter exists.").

**B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In evaluating a motion to dismiss, the court must construe the pleadings in the light most favorable to the plaintiff, accepting as true all factual allegations and any reasonable inferences that can be drawn therefrom. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the

plaintiff to relief.") (internal quotation marks and citation omitted). A plaintiff's failure to sufficiently allege all necessary elements of a claim will warrant dismissal of that claim. *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998) ("The Court will dismiss any claim that . . . fails to plead sufficiently all required elements of a cause of action.").

## IV. DISCUSSION

The Government argues that Plaintiffs' suit for judicial review is untimely and thus must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). The Government also contends that Plaintiffs' causes of action under the APA and 42 U.S.C. § 1983 must be dismissed for failure to state a claim under Rule 12(b)(6). The Court addresses each argument in turn.

### A. Statute of Limitations as a Jurisdictional Bar

### 1. Section 2023(a)(13)'s 30-day Filing Deadline is Not Jurisdictional

The impact of a statute's limitations period on a court's adjudicatory authority depends upon whether the limitations period is jurisdictional or non-jurisdictional. When a limitations period is jurisdictional, "a litigant's failure to comply with the bar deprives a court of all authority to hear a case." *United States v. Kwai Fun Wong*, 575 U.S. —, 135 S. Ct. 1625, 1632 (2015). However, when a limitations period is non-jurisdictional, the period is treated as a "claims-processing rule" that may be equitably tolled by the court under appropriate circumstances. *Id*. at 1638. The Government argues that the 30-day filing deadline in § 2023(a)(13) is jurisdictional based on the structure of the statute, while Plaintiffs argue that the structural argument does not rebut the presumption that equitable tolling is available in suits against the United States. This Court agrees with Plaintiffs that § 2023(a)(13) is non-jurisdictional and thus subject to equitable tolling.

Preliminarily, the Court notes that the parties correctly center their dispute over whether the Act's filing deadline is jurisdictional on the Supreme Court's recent decision in *United States v. Kwai Fun Wong*, 575 U.S. —, 135 S. Ct. 1625 (2015).

Given the importance of *Kwai Fun Wong* on the issue presented, and the relative dearth of lower court decisions interpreting this important case, the Court provides a brief review of *Kwai Fun Wong* before explaining why Plaintiffs' reasoning is more persuasive.

In *Kwai Fun Wong*, the Supreme Court considered whether certain deadlines for bringing tort claims against the United States under the Federal Tort Claims (FTCA), *see* 28 U.S.C. § 2401(b), are jurisdictional, thus depriving courts of authority to consider untimely claims. In deciding the case, the Court first confirmed its holding in *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990), that a rebuttable presumption in favor of equitable tolling applies to suits brought against the United States. *Kwai Fun Wong*, 575 U.S. —, 135 S. Ct. at 1631. The Court then explained that this presumption may be rebutted by a "clear statement" from Congress that a particular time limit was intended to have jurisdictional consequences. *See id*. at 1631–32. The Court emphasized that rebuttal will be difficult in most cases. *Id*. at 1632 ("[I]n applying [the] clear statement rule, we have made plain that most time bars are nonjurisdictional."). Absent a clear indication from Congress, even a filing deadline framed in mandatory and emphatic terms will be treated as a "mere claims-processing rule," rather than as a condition on the court's jurisdiction. *Id*. at 1638.

On the facts of *Kwai Fun Wong*, the Court found the requisite clear statement lacking partly because the section of Title 28 that contains the FTCA's time limitations is separate from the section of Title 28 that confers jurisdiction on federal district courts to hear FTCA claims. *Id*. at 1633 ("Whereas § 2401(b) houses the FTCA's time limitations, a different section of Title 28 [i.e., § 1346(b)(1)] confers power on federal district courts to hear FTCA claims."). The Court noted that given the "structural divide built into the statute," there is "[n]othing [that] conditions the jurisdictional grant on the limitations periods, or otherwise links those separate provisions." *Id*. Standing alone, § 2401(b) did not "speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id*. (citation omitted). The

1  Court thus held that the FTCA filing deadlines contained in § 2401(b) were non-
2  jurisdictional and subject to equitable tolling. *Id*. at 1638.

3      Here, the Government argues that the 30-day limitations in § 2023(a)(13) is
4  jurisdictional because, unlike the section of the FTCA at issue in *Kwai Fun Wong*, §
5  2023 "speak[s] to *both* the deadline to file suit and the district court's jurisdiction
6  over such suit." (ECF No. 7, Reply 2:19–21.) (emphasis in original). The Government
7  emphasizes that § 2023(a)(13) contains both the 30-day filing deadline and a
8  reference to federal district courts, and that § 2023(a)(13) is located near §
9  2023(a)(15), the latter of which outlines the review standard to be exercised by the
10 courts. In the Government's view, these factors provide a clear indication that
11 Congress meant for the 30-day time bar to be jurisdictional.[7] (Reply 2:19–3:8.)

12     The Government's argument is a fair one, but ultimately unavailing. First,
13 although the Supreme Court in *Kwai Fun Wong* explained that "Congress's
14 separation of a filing deadline from a jurisdictional grant indicates that the time bar
15 is not jurisdictional," the Court did not hold that the converse is true. *Kwai Fun Wong*,
16 575 U.S. —, 135 S. Ct. at 1633. Indeed, the Supreme Court on multiple occasions
17 has rejected the argument that a filing requirement's close proximity to a
18 jurisdictional provision necessarily imbues the filing requirement with jurisdictional
19 consequences. *See, e.g.*, *Sebelius v. Auburn Reg'l Med. Cts.*, 568 U.S. —, 133 S. Ct.
20 817, 825 (2013) ("A requirement we would otherwise classify as nonjurisdictional .
21 . . does not become jurisdictional simply because it is placed in a section of a statute

---

[7] The Government originally argued that 7 U.S.C. § 2023(a)(13) is jurisdictional because it is a condition on the United States' waiver of sovereign immunity. (MTD 7:16–8:26.) This argument is insufficient after *Kwai Fun Wong*, and the Government was correct to shift its focus in reply. *See Kwai Fun Wong*, 575 U.S. —, 135 S. Ct. at 1638 (holding that a time bar that conditions a waiver of sovereign immunity does not, in itself, preclude tolling when circumstances warrant.) Relatedly, the string of lower court cases on which the Government relies in its motion to dismiss generally does not reflect the Supreme Court's view that the Government must rebut the presumption that equitable tolling is available in suits against the United States.

that also contains jurisdictional provisions."); *Gonzalez v. Thaler*, 565 U.S —, 132 S. Ct. 641, 651 (2012) ("Mere proximity will not turn a rule that speaks in nonjurisdictional terms into a jurisdictional hurdle."). Thus, the Government's emphasis on the proximity of the 30-day filing deadline to the reference of the federal district courts, and to the standard of review to be exercised by those courts, does not demonstrate that the filing deadline is jurisdictional.

More fundamentally, the Court does not agree with the Government that § 2023(a)(13)'s reference to the district courts, or even § 2023 taken as a whole, "speaks in jurisdictional terms" such that a filing deadline included therein represents a clear statement curtailing the jurisdiction of the Court. Under *Kwai Fun Wong*, a statutory provision containing a time bar speaks in jurisdictional terms when it defines a federal court's jurisdiction over a category of claims generally, addresses the court's authority to hear untimely suits, or somehow restricts the court's usual equitable powers. *Kwai Fun Wong*, 575 U.S. —, 135 S. Ct. at 1633. Thus, it is the framing and purpose of the statutory provision at issue that ultimately determines whether a time limit contained therein is jurisdictional.

Here, the Court finds that § 2023(a)(13) is primarily aimed at "spelling out a litigant's filing obligations without restricting a court's authority." *Kwai Fun Wong*, 575 U.S. —, 135 S. Ct. at 1633. The provision begins "If the store . . . feels aggrieved by such final determination, it may obtain judicial review thereof by . . . ," and then explains the steps for bringing an action for judicial review. 7 U.S.C. § 2023(a)(13). The provision refers to federal district courts as a matter of venue, and to 30 days as a matter of timeliness, but it does not "speak in jurisdictional terms"—that is, it does not condition the district court's jurisdiction on a store meeting the 30-day filing deadline, nor order district courts to dismiss any untimely claims. *Kwai Fun Wong*, 575 U.S. —, 135 S. Ct. at 1632 ("Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it."). Rather, § 2023(a)(13) is more appropriately viewed

as a procedural roadmap instructing an aggrieved store on how and where to file a suit for judicial review. In short, the Government has not shown that the statutory language or context provides a clear signal by Congress that the Act's 30-day filing deadline was meant as "the rare statute of limitations that can deprive a court of jurisdiction." *Id*. Accordingly, the Court finds that § 2023(a)(13)'s 30-day limitations period is non-jurisdictional and thus subject to equitable tolling.[8]

### 2. Plaintiffs are Not Entitled to Equitable Tolling

To find that § 2023(a)(13)'s 30-day filing deadline is subject to equitable tolling does not mean that tolling is warranted under the circumstances presented. A litigant will be entitled to equitable tolling only if he can show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). This is a high bar, and equitable tolling will be "unavailable in most cases." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002); *see also id*. ("[T]he threshold necessary to trigger

---

[8] The Court notes that the Act's implementing regulations provide that an aggrieved store's complaint for judicial review "*must* be filed within 30 days . . . ; otherwise the [agency] determination shall be final." 7 § C.F.R. 279.7(a) (emphasis added). This does not change the Court's analysis of whether the 30-day time bar is jurisdictional. First, although an agency's implementing regulations are generally meant to fill gaps in the statutory scheme left by Congress, the regulations themselves are not a clear statement from Congress. Under *Kwai Fun Wong*, the focus of the inquiry is on congressional intent affirmatively indicated, not on the agency's interpretation of the statute. An administrative agency receives no deference for its interpretation of a federal court's jurisdiction. *See, e.g.*, *Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710, 717–18 (6th Cir. 2013) (concluding that *Chevron* deference does not apply to an agency's interpretation of a federal court's jurisdiction).

Second, *Kwai Fun Wong* makes clear that a time bar that is "framed in mandatory terms" and "emphatically expressed" is not, by reason of those factors, necessarily jurisdictional. *Kwai Fun Wong*, 575 U.S. —, 135 S. Ct. at 1632 (citations omitted). Rather, "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it." *Id*. Thus, even if Congress had included within the Act the same mandatory language that the Agency included in its implementing regulations, the Court would need more than an "exception-free deadline" to find the 30-day limitations period jurisdictional.

1 equitable tolling is very high, lest the exceptions swallow the rule.").

2     To count as sufficiently "extraordinary," the circumstances that caused a litigant's delay must have been beyond his control. Circumstances attributable to a party's own misunderstanding of the law or tactical mistakes in litigation do not meet this standard. *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014); *see also Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008) ("Equitable tolling is typically denied in cases where a litigant's own mistake clearly contributed to his predicament.") (citation omitted). Furthermore, when a deadline is missed as a result of ordinary excusable neglect, including attorney negligence, equitable tolling is not justified. *See Irwin*, 498 U.S. at 96.

    Plaintiffs argue that they are entitled to equitable tolling because (1) the FNS did not withdraw the Arizona store's SNAP authorization until almost 10 years after the disqualification of the El Cajon store, and (2) by the time the FNS withdrew the Arizona store's authorization, Plaintiffs no longer could obtain state court documents that they believe are relevant to challenging the FNS decision.[9] (ECF No. 6, Pls.' Opp'n 2:26–3:8.) Neither of these arguments, taken separately or together, is sufficient to demonstrate an entitlement to equitable tolling.

    First, Plaintiffs' argument regarding the timing of the FNS final decision is inapposite: the conduct and circumstances relevant to equitable tolling must have occurred during the filing period that Plaintiffs seek to toll, not before the period began or after the period has closed. *See Olivo v. Quarterman*, No. 3:06-CV-2399-L, 2007 WL 4205874, at *7 (N.D. Tex. Nov. 27, 2007) ("It is axiomatic that equitable

---

[9] Plaintiff Janan Stephan asserts that sometime after receiving the January 2005 charge letter at the El Cajon store, he was charged with, and pled guilty to, fraud to obtain aid, a misdemeanor under California law. (Compl. ¶¶ 14–17.) According to Stephan, he paid a $1,000 fine and received three years of probation. The conviction was expunged in 2008. Stephan curiously argues that this $1,000 fine, imposed as part of his conviction under state law, constitutes a civil penalty under the Food and Nutrition Act, a federal law. In Stephan's view, because he paid a $1,000 fine pursuant to his state court conviction, the FNS should have imposed a penalty less severe than disqualification from SNAP.

1 tolling must be based on conduct that took place or at least began during the period a
2 litigant is seeking to toll on equitable grounds.") (citing cases). The fact that the FNS
3 did not withdraw the Arizona store's SNAP authorization sooner does not establish
4 that an extraordinary circumstance occurred during the 30-day limitations period that
5 prevented Plaintiffs from timely filing their suit.

Second, to the extent Plaintiffs argue that their inability to obtain state court records relevant to their Complaint is an extraordinary circumstance sufficient for equitable tolling, this too fails. Plaintiffs apparently believe these records will help bolster their challenge to the FNS determination. (Compl. ¶¶ 14–17.) But the fact that these records were unavailable had no bearing on Plaintiffs' ability to meet the 30-day deadline. The records are not a condition for filing suit, and Plaintiffs do not allege that their lawyer or the FNS caused Plaintiffs to miss the deadline by tricking or deceiving them into thinking the records were a requirement. *See, e.g.*, *Irwin*, 498 U.S. at 96 ("We have allowed equitable tolling in situations . . . where the complainant has been induced or tricked by his adversary's misconduct into allowing a filing deadline to pass."); *Luna v. Kernan*, 784 F.3d 640, 649 (9th Cir. 2015) (noting that "egregious attorney misconduct" may serve as a basis for equitable tolling). Instead, it appears Plaintiffs made a tactical decision to try and locate certain documentation before filing their Complaint, but ultimately found the documentation unavailable. The decision to wait to file was of Plaintiffs' own making—whether it was a tactical mistake or "garden variety negligence," *Luna*, 784 F.3d at 646, nothing in the record suggests that extraordinary circumstances beyond Plaintiffs' control prevented them from filing their Complaint within 30 days. Under these circumstances, equitable tolling is unwarranted. *See Menominee Indian Tribe of Wis.*, 764 F.3d at 58 ("The circumstance that stood in a litigant's way cannot be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation."); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (holding that attorney negligence, including miscalculation of a filing deadline, is not an extraordinary

circumstance sufficient to warrant equitable tolling).

For these reasons, the Court finds that Plaintiffs are not entitled to equitable tolling and that the action for judicial review is barred by the limitations period. Accordingly, the Government's motion to dismiss this count is GRANTED. The Court will grant Plaintiffs leave to amend this portion of the Complaint, but only to the extent that Plaintiffs can allege facts in good faith to demonstrate equitable tolling of the 30-day time bar.

**B. Plaintiffs May Not Bring a Separate Suit for Judicial Review under the APA**

Plaintiffs' second count is for judicial review under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq. Among other things, Plaintiffs allege that the FNS final agency determination was "arbitrary and capricious," "unsupported by substantial evidence," and contrary to the statutory scheme established by Congress. (Compl. ¶¶ 31–33.) The Government argues that the Food and Nutrition Act already provides a mechanism for judicial review, thereby foreclosing review under the APA. (MTD 9:18–10:2.) This Court agrees with the Government.

With exceptions not applicable here, the APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court."[10] 5 U.S.C. § 704. Thus, review under the APA can be invoked only where there is lack of an alternative adequate remedy elsewhere. As the Supreme Court explained in its seminal decision interpreting § 704: "[T]he provision as enacted . . . makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). In other words, "where Congress has provided special and adequate review procedures," § 704 "does not provide additional judicial remedies." *Bowen*, 487 U.S. at 903 (quotation marks omitted); *see also Brem-Air Disposal v. Cohen*, 156

---

[10] Pursuant to 5 U.S.C. § 701, review under the APA is available except to the extent that "statutes preclude judicial review" or "agency action is committed to agency discretion by law."

F.3d 1002, 1004 (9th Cir. 1998) ("[F]ederal courts lack jurisdiction over APA challenges whenever Congress has provided another 'adequate remedy.'") (quoting 5 U.S.C. § 704).

Here, the Court finds that Congress has provided, through 7 U.S.C. § 2023, a "special and adequate review procedure" such that review under the APA is precluded. First, a plain reading of the Food and Nutrition Act makes clear that the Act's review procedure is "special" in the sense that it specifically encompasses the type of action that Plaintiffs seek to bring here: judicial review of an FNS sanction determination.[11] *See* Sarah L. Brinton, *Toward Adequacy*, 69 N.Y.U. Ann. Surv. Am. L. 357, 368 (2013) (analyzing *Bowen* and arguing that what matters for finding review precluded under the APA "is Congress's intent for judicial review of particular agency actions to be heard in a special and specific way"). Where Congress, by statute, has specified a judicial review procedure for hearing the type of injury of which plaintiffs complain, the APA generally has no application. *See Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 226–27 (D.C. Cir. 2011) ("Where a statute affords an opportunity for *de novo* district-court review of the agency action, APA review is precluded since Congress did not intend to permit a litigant challenging an administrative denial . . . to utilize simultaneously both the statute's review provision and the APA.") (internal quotation marks and citation omitted); *Coos Cty. Bd. of Comm'rs v. Kempthorne*, 531 F.3d 792, 810 (9th Cir. 2008) (holding that APA review was precluded where a separate congressional statute already provided for review of plaintiff's claim).

Judicial review pursuant to 7 U.S.C. § 2023 is also "adequate." The statute provides that the action for judicial review "shall be a trial de novo" in which the district court "shall enter such judgment or order as it determines is in accordance

---

[11] Although not strictly required by *Bowen*, the Court here bifurcates its § 704 analysis into a "special" component and an "adequate" component. The district court in *Love v. Connor*, 525 F. Supp. 2d 155 (D.D.C. 2007), adopted a similar approach.

| | |
|---|---|
| 1 | with the law and the evidence." 7 U.S.C. §§ 2023(a)(13); (a)(16). Although the de |
| 2 | novo provision applies slightly differently depending on the agency action under |
| 3 | review, the provision generally provides for a broader standard of review than that |
| 4 | available under the APA, and in no case is review under § 2023 more deferential to |
| 5 | the agency than it would be under the APA. *See Wong v. United States*, 859 F.2d 129, |
| 6 | 132 (9th Cir. 1988) ("Whereas the FNS finding that a firm violated the Food Stamp |
| 7 | Act is reviewed de novo, review of the sanction imposed by the FNS is governed by |
| 8 | the arbitrary and capricious standard."); *see also Plaid Pantry Stores, Inc. v. United |
| 9 | States*, 799 F.2d 560, 563 (9th Cir. 1986). Accordingly, the relevant standards of |
| 10 | review do not provide a basis for finding § 2023 to be an inadequate alternative |
| 11 | remedy. |
| 12 |       Nor is review under the statute inadequate on the grounds that the APA |
| 13 | provides for relief that Plaintiffs cannot obtain under the judicial review procedure |
| 14 | specified in § 2023. *See, e.g.*, *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) |
| 15 | ("An alternative remedy will not be adequate under [the APA] if the remedy offers |
| 16 | only 'doubtful and limited relief.'") (quoting *Bowen*, 487 U.S. at 901). Plaintiffs seek |
| 17 | a judgment reversing the FNS determination and reauthorizing their participation in |
| 18 | SNAP. (Compl. 11.) This relief is available under the statute. In exercising judicial |
| 19 | review under § 2023, the district court may vacate a penalty, choose a new penalty |
| 20 | based on all of the evidence, or remand for the agency to select a new penalty. *Plaid |
| 21 | Pantry Stores*, 799 F.2d at 566; *see also Wong*, 859 F.2d at 134 (affirming district |
| 22 | court's modification of FNS sanction imposed on grocery store). Thus, this is not a |
| 23 | case, as in *Bowen*, where a plaintiff is unlikely to obtain the relief sought under the |
| 24 | congressionally specified review procedure. Here, Congress has provided a review |
| 25 | procedure designed to hear the type of challenge that Plaintiffs bring, and that |
| 26 | procedure allows for the type of relief that Plaintiffs seek. *See Garcia*, 563 F.3d at |
| 27 | 522 ("[T]he alternative remedy need not provide relief identical to relief under the |
| 28 | APA, so long as it offers relief of the 'same genre.'") (quoting *El Rio Santa Cruz* |

*Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005)). Thus, the Court finds that the judicial review procedure provided in 7 U.S.C. § 2023 is an adequate alternative remedy that precludes APA review.

For these reasons, the Court GRANTS the Government's motion to dismiss Plaintiffs' APA claim. Furthermore, given that the law clearly establishes the adequacy of judicial review under § 2023, the Court finds that any amendment to Plaintiffs' APA claim would be futile and thus dismisses this claim with prejudice.[12] *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) (affirming the district court's denial of leave to amend a complaint where amendment would have been futile); *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988) ("If the district court determines that the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' then . . . dismissal without leave to amend is proper.") (citation omitted).

**C. Plaintiffs Fail to State a Claim under 42 U.S.C. § 1983**

Plaintiffs' final claim, brought under 42 U.S.C. § 1983, is for violation of the procedural and substantive due process protections guaranteed by the Fifth Amendment to the Constitution. (Compl. ¶¶ 35–37.) The Government contends that due process claims arising from a grocery store's disqualification from SNAP are not cognizable as a matter of law, and so must be dismissed. (MTD 10:3–22.) Although

---

[12] At no point in their opposition do Plaintiffs address the Government's argument that APA review is precluded by provision of an alternative adequate remedy in 7 U.S.C. § 2023. Where a plaintiff declines to defend a claim in opposition, the Court is within its discretion to treat plaintiff's silence as abandonment of the claim and concession that the claim be dismissed. *See Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.") (citation omitted); *Hopkins v. Women's Div. Gen. Bd. Of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). Accordingly, the Court also dismisses Plaintiffs' APA claim on the alternative ground that Plaintiffs' failure to defend the claim in opposition constitutes abandonment of the claim.

the Court finds the Government's reasoning unpersuasive, the Court agrees that Plaintiffs have failed to state a § 1983 claim.

Section 1983 provides a cause of action for violations of constitutional and federal statutory rights. *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015) (citing *Anderson v. Warner*, 451, F.3d 1063, 1067 (9th Cir. 2006)). To state a claim under § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "Dismissal of a § 1983 claim is proper if the complaint is devoid of factual allegations that give rise to a plausible inference of either element." *Naffe*, 789 F.3d at 1036.

Here, Plaintiffs fail to allege facts that plausibly suggest constitutional violations were committed by a person acting "under color of state law." Rather, the conduct Plaintiffs complain of—i.e., the FNS determination withdrawing the Arizona store's SNAP authorization—is action taken by a federal agency pursuant to a federal statute. Such actions, by definition, fail to satisfy § 1983's under color of state law requirement. *See Ibrahim v. Dept. of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008) (finding that no cause of action is available under section 1983 when defendants are federal agencies and federal officials who took action pursuant to federal law); *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987) (noting that there is "no valid basis for a claim under section 1983" where plaintiff's allegations were against "federal officials acting under color of federal law"); *see also Naffe*, 789 F.3d at 1036 ("An individual acts under color of state law when he or she exercises power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'") (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Accordingly, the Court GRANTS the Government's motion to dismiss Plaintiffs' § 1983 claims for failure to state a claim. Moreover, given that this case arises strictly out of a federal agency's decision to take action pursuant to federal law, the dismissal of Plaintiffs' § 1983 claims is with

1 prejudice.

2 **V.    CONCLUSION & ORDER**

3 For the foregoing reasons, the Court **GRANTS IN PART** the Government's motion to dismiss.[13] Plaintiffs' causes of action for judicial review under the APA and for violations of procedural and substantive due process under § 1983 are **DISMISSED WITH PREJUDICE**. Plaintiffs' action for judicial review under 7 U.S.C. § 2023 is **DISMISSED WITH LEAVE TO AMEND**. Plaintiffs may only amend this portion of the Complaint to the extent they can allege facts in good faith to establish their entitlement to equitable tolling of § 2023(a)(13)'s 30-day time bar. If Plaintiffs choose to file an amended complaint, they must do so no later than **May 18, 2016**.

**IT IS SO ORDERED.**

DATED: May 4, 2016

Hon. Cynthia Bashant
United States District Judge

---

[13] In light of the Court's dismissal of Plaintiffs' claims, Plaintiffs' request to stay the administrative action pending judicial review is DENIED AS MOOT.